IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01283-WYD

IN RE:
BILLY JASON HARWELL,

    Debtor,

BILLY JASON HARWELL,

    Appellant,

v.

LYNN MARTINEZ, Trustee,

    Appellee.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on the appeal by Appellant Billy Jason Harwell ("Harwell") from an order issued by the Bankruptcy Court made in Adversary Proceeding number 05-41744-ABC. This appeal arises from the Bankruptcy Court's June 5, 2007 Order disallowing Harwell's claimed homestead exemption in the Kremmling Ranch[1] and sustaining the trustee's objection to that exemption. (Hr'g Tr. 15, June 5, 2007.) In this appeal, Harwell argues that the Bankruptcy Court erred in failing to apply the Colorado homestead exemption as amended, Colo. Rev. Stat. §38-41-201, "which grants an exemption to an individual owner of a home and occupied by

---

[1]Also referred to as the "Singer Ranch" in the record.

such owner even if not the home of the owner's family residing elsewhere." (Opening Br. 1.)

II. RELEVANT FACTS

In a previous order in a related appeal, 07-cv-01140-WYD, I set forth detailed recitations of the pertinent facts of this case. Accordingly, those facts are incorporated by reference in this Order. Additionally, I find that the following facts are also relevant to the particular appeal at issue. On October 10, 2005, Harwell filed a voluntary Chapter 11 bankruptcy petition. Harwell is married, but his wife did not join his bankruptcy filing. On January 30, 2007, the trustee filed a motion to convert the case from Chapter 11 to Chapter 7. Harwell did not oppose conversion. Accordingly, on February 28, 2007, the Bankruptcy Court entered an Order converting the case to Chapter 7.

Throughout his bankruptcy proceeding, Harwell has filed three iterations of his Schedule C claim of exemptions. Harwell's initial Schedule C was filed on October 10, 2005 with his Chapter 11 bankruptcy petition. This Schedule C claimed various household goods, tools of the trade, and a life insurance policy as exempt. On December 13, 2006, shortly after the conversion of this case to a Chapter 7 proceeding, Harwell amended his Schedule C. In this amended version, Harwell added a claimed homestead exemption for the Kremmling Ranch, listed the life insurance policy, and amended the tools of the trade and household furnishing exemption claims. On April 9, 2006, Harwell again amended his Schedule C. This second amended version added property in Florida to the claimed household goods exemption,

continued the life insurance policy and homestead exemptions, and revised the tools of the trade exemption.

On January 12, 2007, the trustee filed an objection to several of Harwell's claims of exemption. On May 29, 2007, the Bankruptcy Court conducted an evidentiary hearing on the trustee's objections to Harwell's claims of exemption. On June 5, 2007, the Bankruptcy Court delivered its oral findings of fact, conclusions of law, and rulings. The Bankruptcy Court entered a written Order on June 6, 2007 which incorporated its oral rulings. Relevant to this appeal, the Bankruptcy Court denied Harwell's claim of a homestead exemption in the Kremmling Ranch. Harwell timely filed the instant appeal, which is now before me.

By way of background, when he filed his bankruptcy petition on October 10, 2005, Harwell testified that he was a self-employed business consultant primarily in the formation of endoscopic examination clinics. Harwell had been in that business for nine years. Also when he filed for bankruptcy, Harwell had been married for twenty-three (23) years and had two daughters. Harwell testified that he was not estranged from his wife.

On May 5, 2005, five months prior to filing bankruptcy, Harwell quitclaimed his house at 8345 Bluffview Way, Colorado Springs, Colorado ("Colorado Springs house") to his wife. As of the petition date, Harwell's wife and children resided full-time at the Colorado Springs house. Following the transfer of ownership of the Colorado Springs house to his wife, Harwell continued to pay substantially all his family's expenses associated with the Colorado Springs house, including the first and second mortgages,

utilities, and maintenance.

On October 10, 2005, the date the initial bankruptcy petition was filed, Harwell signed a loan application in which he referred to the Colorado Springs house as his residence. Additionally, Harwell used the Colorado Springs house as his home address on his tax returns, as his mailing address on his bankruptcy petition, and as the address where he could be served as a registered agent for two Colorado corporations. In 2004, Harwell changed his voter registration to Grand County, Colorado and has since voted in Kremmling elections. In 2005, Harwell changed his driver's license registration in Colorado to the Kremmling Ranch address. On July 12, 2005, in sworn discovery responses, Harwell stated that his residence was the Colorado Springs house. On October 10, 2005, the date the Chapter 11 petition was filed, Harwell listed his address as the Kremmling Ranch. Harwell testified that his wife and children have visited the Kremmling Ranch three times since Harwell purchased it in 2000.

III. ANALYSIS

A. Standard of Review

On appeal, I may affirm, modify, or reverse the Bankruptcy Court's order, or remand with instructions for further proceedings. *Kimco Leasing, Inc. v. Knee,* 144 B.R. 1001, 1005 (N.D.Ill. 1992). I must review the findings of fact under a "clearly erroneous" standard. *Id.* A "finding of fact is clearly erroneous if it is without factual support in the record or if, after a review of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Davidovich*, 901 F.2d 1533,

1536 (10th Cir. 1990). I must review the Bankruptcy Court's conclusions of law, on the other hand, *de novo*. *Id.* "The burden of proof is on the party seeking to reverse a bankruptcy court's holding." *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999). "That party must show that the court's holding was clearly erroneous as to its assessment of the facts or erroneous in its interpretation of the law, and not simply that another conclusion could have been reached." *Id.*

      B.    <u>Whether the Bankruptcy Court Erred When it Denied Harwell's Claim of a Homestead Exemption in the Kremmling Ranch</u>

In this appeal, Harwell argues that the Bankruptcy Court committed reversible error by denying his claim of a homestead exemption in the Kremmling Ranch because the Bankruptcy Court applied the wrong standard under Colorado law. Specifically, Harwell asserts that "[t]he Bankruptcy Court erred in construing [Colo. Rev. Stat. §38-41-201] . . . by continuing to follow the pre-amendment opinions which restricted the exemption to 'householder being head of family' rather than simply 'occupied as a home by the owner.'" (Opening Br. at 12.)

Colorado law provides a homestead exemption for every homestead occupied as a home by the owner or his family. The purpose of Colorado's homestead exemption is to secure to a householder a home for himself and his family, regardless of his financial condition. *See Matter of Lombard*, 739 F.2d 499 (10th Cir. 1984). The applicable homestead exemption statute, Colo. Rev. Stat. § 38-41-201, reads as follows:

> Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in actual cash value in excess of any liens or encumbrances on the

homesteaded property in existence at the time of any levy of
execution thereof.

(a) The sum of sixty thousand dollars if the homestead is
occupied as a home by an owner thereof or an owner's
family . . .

Colo. Rev. Stat. § 38-41-201. This Court has stated that "Colorado Courts have expressed a policy of broad and liberal interpretation of the homestead exemption." *In re Wells,* 29 B.R. 688, 689 (D.Colo. 1983). Further, this Court has discussed the interpretation and purpose of the homestead exemption as follows:

> The decisions in this jurisdiction uniformly hold that the homestead exemption laws are not in derogation of the common law and are to be liberally construed for the purpose of giving effect to the beneficial object in view [citations omitted]. The primary purpose of the statute is to place the property designated as a homestead out of the reach of creditors while occupied as a home.

*Hass v. Delaney*, 165 F. Supp. 488, 489-90 (D.Colo. 1958).

Turning to my analysis, after holding an evidentiary hearing on May 29, 2007, Judge Campbell found that the evidence before the Court was clear that the Colorado Springs house is the family residence. After hearing all of the evidence and considering the arguments by the parties, Judge Campbell concluded the following in an oral ruling on June 5, 2007:

> The remaining exemption claimed by the debtor and objected to by the trustee related to the debtor's homestead exemption under C.R.S. § 38-41-201 claims with respect to the debtor's residence at the Kremmling Singer Ranch, and the 69 acres it sits on. It is here that the debtor conducts his haying operation, one of his several business enterprises.
>
> At the time of filing this bankruptcy, the debtor's principle

[sic] occupation conducted from Colorado Springs was as a real estate developer and consultant to medical clinics. The developer acquired this property in Kremmling in about 2000.

Debtor's haying operation has not been conducted with an expectation of making money. Instead, this is an outlet for the debtor's fondness for agrarian lifestyle and a substantial income tax shelter for other income that this operation provides, some $199,998 in the last full year before this case was filed, according to the debtor's 2004 federal tax return.

The debtor has been married some 25 years, has two teenage children with his spouse, and testified that he is not estranged from his wife and family. The debtor has three homes; the Kremmling Ranch on which he claims his homestead exemption that is contested by the trustee, the family home in Colorado Springs, and the vacation home in Tina Island, Florida.

The Kremmling Ranch is scheduled as being owned both by the debtor on Schedule A, and by a partnership of which the debtor owns 50 percent on Schedule B. If the former were accurate, the debtor could not claim this property as exempt. The evidence is that the Schedule B remains inaccurate in this regard, and that the Kremmling property is, in fact, titled in the debtor.

The Colorado Springs home is titled in the debtor's non-filing spouse. The debtor quitclaimed his interest in this home to his wife approximately five months before he filed this bankruptcy case. The record is unclear as to whether this transfer was part of a bona fide post-nuptial plan or was made to hinder one or more creditors.

The Florida vacation home is scheduled as being owned by the debtor. The debtor spends substantial portions of his time residing in each the Kremmling and Colorado Springs homes, and this was the case when this bankruptcy was filed.

The debtor's several business ventures, some have been

> conducted from Colorado Springs and some from Kremmling. Within approximately the year before filing bankruptcy, the debtor changed his driver's license address and voter registration to Kremmling. The debtor variously lists Kremmling and Colorado Springs as his residence and mailing address on papers such as tax returns, loan applications, corporate reports and bankruptcy filings.
>
> The evidence before this Court is clear that Colorado Springs is the family residence. The debtor is the family bread-winner, and he provides funds for substantially all the Colorado Springs household expenses, maintenance, and the home mortgage. At the time this bankruptcy was filed, the debtor's family members had only visited the Kremmling Ranch a total of three times.
>
> On the foregoing facts, the Court concludes that the Kremmling Ranch does not qualify as this debtor's homestead for purposes of claiming an exemption under C.R.S. § 38-41-201. According to Colorado case law, in large measure, the underlying policy for Colorado's homestead exemption is preserving the home to and securing the habitation of the family. The debtor's family home is the Colorado Spring property, not the Kremmling Ranch. The ranch is primarily a hobby and a tax shelter for this debtor, not his homestead.
>
> Among other evidence leading the Court to this conclusion is the fact that on his federal tax return for the years preceding bankruptcy, the mortgage interest on the Kremmling property is not claimed as home mortgage interest – as the home mortgage interest deduction, it is claimed as a business expense. Home mortgage interest is claimed for the Colorado Springs home as a deduction.

(Hr'g. Tr. 12-14, June 5, 2007.)

With respect to his first argument, Harwell asserts that Judge Campbell applied the incorrect legal standard in determining that the Kremmling Ranch was not Harwell's home. Specifically, Harwell argues that the Colorado homestead exemption as

amended in 1975 eliminated any requirement of family occupancy.[2]  Essentially, Harwell is arguing that Judge Campbell erroneously restricted the homestead exemption to 'householder being head of family' in disallowing the homestead exemption on the Kremmling Ranch.  Based on my review of the record and the case law, I reject Harwell's argument.

The record before me shows that Judge Campbell made detailed factual findings that were not clearly erroneous.  Judge Campbell used his factual findings and applied them both to the language set forth in Colo. Rev. Stat. § 38-41-201 and Colorado case law interpreting that statute.  The pertinent language of the statute states that "[e]very homestead in the state of Colorado occupied as a home by the owner thereof or his family shall be exempt . . . ." Colo. Rev. Stat. § 38-41-201.  Judge Campbell's conclusions that the Kremmling Ranch was neither Harwell's home nor his family's home were supported by the evidence presented.  For example, the record shows that until sometime in 2004, Harwell's primary residence was at the Colorado Springs house.  On the date Harwell filed his bankruptcy petition, he lived at the Colorado Springs house with his family.  Harwell was paying for his family's living expenses in Colorado Springs including the mortgages, maintenance, and utilities on the Colorado Springs house.  Also in support of Judge Campbell's conclusions are the facts that Harwell variously listed the Kremmling Ranch and the Colorado Springs house as his primary residence and mailing address on important documents such as tax returns,

---

[2]Before the 1975 amendment, the Colorado homestead exemption contained the following language: "[e]very householder in the state of Colorado being the head of family shall be entitled to a homestead . . . ." Colo. Rev. Stat. § 77-3-1 (1963).

loan applications, corporate reports and bankruptcy filings.

Alternatively, the facts in support of Harwell's argument that the Kremmling Ranch was his residence are that he changed both his voter registration and driver's license to the Kremmling Ranch address in the year prior to the filing of his bankruptcy petition. However, in the evidentiary hearing, Judge Campbell took note of those facts and weighed them in making his findings. (Hr'g Tr. 158, May 29, 2007.) In the end, Judge Campbell found that based on Colorado case law, which controls this matter,[3] the underlying policy for Colorado's homestead exemption is designed to preserve the home and secure the habitation of the family from creditors. Guided by Colorado law, Judge Campbell concluded that Harwell's home is the Colorado Spring house, not the Kremmling Ranch. Judge Campbell further found that the Kremmling Ranch is primarily a hobby and a tax shelter, not Harwell's homestead.[4]

The record before me shows that Harwell was given the opportunity to present evidence in support of his claimed homestead exemption at an evidentiary hearing. Both Harwell and Martinez gave live testimony which was considered by Judge Campbell in his rulings. Additionally, Harwell offered exhibits, which were admitted by Judge Campbell and also considered in his rulings. In making his oral findings, Judge

---

[3] Harwell spends much of his briefs arguing Florida case law. However, many of the Florida cases cited by Harwell are not only factually distinguishable from the present case, they are not controlling.

[4] I note that if Harwell had not quitclaimed the Colorado Springs house to his wife just prior to filing his bankruptcy petition, it is clear from the record that Judge Campbell would have allowed a homestead exemption on that residence. However, under Colorado law, since Harwell no longer owns the Colorado Springs house, the homestead exemption is not available to him.

-10-

Campbell thoroughly outlined the evidence he considered with respect to Harwell's claimed homestead exemption and made detailed rulings as to his findings of fact and conclusions of law. In making his rulings, Judge Campbell addressed both the legal standard and the evidence presented though live testimony and written documents. Judge Campbell also made the appropriate factual inquiries required by the homestead exemption.

Based on my careful review of the record, I do not find that Harwell has shown that Judge Campbell's holding was clearly erroneous as to his assessment of the facts or erroneous in his interpretation of the law. Harwell's argument that Judge Campbell could have reached a different conclusion (that he was entitled to a homestead exemption on the Kremmling Ranch) is not sufficient grounds to disturb his rulings. Therefore, I find that there is no evidence in the record of any error with respect to the disallowment of Harwell's claimed homestead exemption in the Kremmling Ranch.

IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Harwell's appeal of the Bankruptcy Court's Order disallowing Harwell's claimed homestead exemption in the Kremmling Ranch and sustaining the trustee's objection to that exemption is **DENIED**, and the Bankruptcy Court's Order is **AFFIRMED.**

Dated: February 13, 2008

          BY THE COURT:

          s/ Wiley Y. Daniel
          Wiley Y. Daniel
          U. S. District Judge